STRATBUCKER CHILDREN'S TRUST, DORIS STRATBUCKER, TRUSTEE, APPELLEE AND CROSS-APPELLANT, V. ZONING BOARD OF APPEALS ET AL., APPELLANTS AND CROSS-APPELLEES.

497 N.W.2d 671

Filed March 26, 1993.    No. S-90-949.

Herbert M. Fitle, Omaha City Attorney, and Alan M. Thelen for appellants.

James E. Lang, of Laughlin, Peterson & Lang, for appellee.

HASTINGS, C.J., WHITE, CAPORALE, and FAHRNBRUCH, JJ., MERRITT, D.J., and COLWELL, D.J., Retired.

WHITE, J.

Stratbucker Children's Trust (Stratbucker) appeals the Nebraska Court of Appeals' decision that partially affirmed and partially reversed the district court's rulings on the extension of a zoning waiver. Stratbucker contests the appellate court's holdings that (1) the district court did not abuse its discretion by failing to extend Stratbucker's zoning waiver for an indefinite period; and (2) the district court improperly ordered appellant Omaha Zoning Board of Appeals (the board)

to reissue several revoked permits to Stratbucker. We affirm the judgment of the Court of Appeals in part, and in part reverse and remand.

On August 25, 1988, the board granted Stratbucker a conditional zoning waiver that allowed Stratbucker to operate a farmer's market in an otherwise residential area of Omaha. The board conditioned the waiver on compliance with several requirements, including specified operating hours, limits on sign dimensions, compliance with the terms of an agreement with Omaha Planning Director S.P. Benson, and that "this waiver be conditioned on a one year review basis."

On August 24, 1989, the board refused to continue the conditional waiver. Stratbucker appealed to the Douglas County District Court, which found in its July 16, 1990, order that the board had failed to give Stratbucker a fair and complete hearing. The court, taking additional evidence pursuant to Neb. Rev. Stat. § 14-414 (Reissue 1991), found that Stratbucker had in fact complied with the conditions of the waiver. In particular, the court found (1) that Stratbucker had expended substantial amounts of money in attempting to comply with the waiver; and (2) that a December 14, 1988, report by Omaha's chief building inspector indicated that Stratbucker had complied with the terms of the Stratbucker-Benson agreement. The court therefore reversed the board's August 24, 1989, ruling and extended the conditional waiver *until August 25, 1991*, conditioned on two other matters.

In the interim between the filing of Stratbucker's appeal to the district court and the court's July 16, 1990, order, the city of Omaha revoked three building permits and a sign permit held by Stratbucker. On September 7, 1990, the district court ordered the board to reissue the sign permit and two of the building permits to Stratbucker (hereinafter referred to as the "permits"). The board then appealed to the Court of Appeals.

The board argued to the Court of Appeals that the district court had erred by extending the conditional waiver and by ordering that the permits be reissued. Stratbucker cross-appealed, arguing that although the district court had correctly extended the zoning waiver, it had acted arbitrarily by extending the waiver only until August 25, 1991.

The Court of Appeals, in an opinion filed on August 11, 1992, first held that the board's argument regarding extension of the waiver was moot because the extension period had since passed. *Stratbucker Children's Trust v. Zoning Bd. of Appeals*, 1 NCA 1108 (1992). The court then held that the district court had incorrectly ordered reissuance of the permits, reasoning that the permit issue was beyond the scope of the decision appealed to the district court. Finally, in dismissing the cross-appeal, the Court of Appeals held that the district court had not abused its discretion by extending the waiver for only a finite period.

Stratbucker then petitioned this court to further review the decision of the Court of Appeals. Restated, Stratbucker alleges that the Court of Appeals erred by (1) failing to find that the district court abused its discretion by arbitrarily extending the waiver for only 13 months; and (2) reversing the district court's order that directed the board to reissue the permits.

Recently, in *Bowman v. City of York*, 240 Neb. 201, 482 N.W.2d 537 (1992), we addressed the standards of review for district courts and appellate courts with regard to the decision of a city board of adjustment. In *Bowman*, we stated at 210-11, 482 N.W.2d at 544:

> [A] district court may disturb a decision of such a board [of adjustment] only if . . . the decision was illegal or is not supported by the evidence and is thus arbitrary, unreasonable, or clearly wrong. In deciding whether a board's decision is supported by the evidence, the district court shall consider any additional evidence it receives.
>
> . . . .
>
> . . . [A]n appellate court reviews the decision of the district court and . . . irrespective of whether the district court took additional evidence, the appellate court is to decide if, in reviewing a decision of the board of adjustment, the district court abused its discretion or made an error of law. Where competent evidence supports the district court's factual findings, the appellate court will not substitute its factual findings for those of the district court.

(Citations omitted.) Accord *Barrett v. City of Bellevue*, 242

Neb. 548, 495 N.W.2d 646 (1993).

Although the zoning board of appeals is created pursuant to a different statute than is a board of adjustment, the portions of the statutes relating to the standard of review are virtually identical. See Neb. Rev. Stat. §§ 14-408, 14-413, 14-414, 19-908, and 19-912 (Reissue 1991). As a result, our analysis in *Bowman* concerning the applicable standards for review of a decision of a board of adjustment also applies to the review of a decision from the zoning board of appeals. Cf. *Mossman v. City of Columbus*, 234 Neb. 78, 449 N.W.2d 214 (1989). We thus apply those standards to the decisions we now review.

We first address Stratbucker's contention that the Court of Appeals erred when it reversed the district court's order that the board reissue the revoked permits. The Court of Appeals correctly noted that the city council is given the power to issue building permits. Neb. Rev. Stat. § 14-419 (Reissue 1991). However, nothing in the statutes implies that the board has a similar power. The board *is* given express power to issue special permits, but only to the State, political subdivisions, and public utilities. Neb. Rev. Stat. § 14-412 (Reissue 1991).

The board has authority to hear and decide *appeals* from, and *review* decisions or orders of, administrative officials. It also hears and decides matters referred to it by ordinance. Neb. Rev. Stat. § 14-409 (Reissue 1991). The reissuance of the permits was never appealed to the board, nor was it required by ordinance. Instead, the permit issue came to the board via the district court—eliminating the "appeal and review" inherent in the board's nature. The proper entity to issue the building permits was the city of Omaha. See § 14-419. However, the city was not made a party to this action.

Moreover, the permit issue was not raised in Stratbucker's amended petition to the district court. Rather, it was raised in a separate motion. Section 14-414 states that the district court may reverse, modify, or affirm "the decision brought up for review." The permit issue was not brought up for review from the board. Hence, the district court had no authority to deal with the permit issue.

The district court made an error of law by ordering the board to reissue the revoked permits. The Court of Appeals correctly

reversed the district court's judgment on this issue. Stratbucker's first assignment of error is without merit.

With regard to the conditional waiver, Stratbucker argues that instead of a 13-month extension, the extension should have been indefinite—continuing until the conditions of the waiver are violated. We first must determine the meaning of the relevant language from the waiver.

Stratbucker's conditional waiver provides, in pertinent part: "Approval to operate a farmer's market . . . on the following conditions . . . that this waiver be conditioned on a one year review basis . . . ." Stratbucker contends that the waiver provided for a one-time review which, if satisfied, would cause the waiver to remain in effect as long as the Trust complied with the waiver's conditions. The board, on the other hand, argues that the waiver provides for annual reviews. Under an "annual review" interpretation, if the reviewing panel found Stratbucker to be in compliance with the waiver's conditions, then the waiver would be extended only until the following year's review.

Because the language of the waiver lends itself to two plausible constructions, each with differing legal ramifications, we must construe the waiver to determine its meaning. The board, which is neither a court nor a legislature, is a governmental authority that affects the rights of private parties through adjudication or rulemaking. As such, it functions primarily as an administrative agency. See *Bowman, supra* (citing 1 Kenneth C. Davis, Administrative Law Treatise § 1:2 at 9 (2d ed. 1978)). See, also, *Florentine v. Town of Darien*, 142 Conn. 415, 115 A.2d 328 (1955) (holding that a zoning board with the power to apply zoning regulations is primarily an administrative agency).

Generally, for purposes of construction, a rule or order of an administrative agency is treated like a statute. See, *Texas Liquor Control Bd. v. Attic Club, Inc.*, 457 S.W.2d 41 (Tex. 1970), *appeal dismissed* 400 U.S. 986, 91 S. Ct. 459, 27 L. Ed. 2d 435 (1971); *Texas Bankers Ass'n v. Government Emp. Credit U.*, 625 S.W.2d 338 (Tex. Civ. App. 1981); 73A C.J.S. *Public Administrative Law and Procedure* § 149 (1983). We therefore apply our rules of statutory construction to the language of the

waiver.

The interpretation of a statute (or zoning waiver) is a question of law, and we are therefore obligated to reach a conclusion independent of the decision reached by the trial court. *Dowd v. First Omaha Sec. Corp.*, 242 Neb. 347, 495 N.W.2d 36 (1993); *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991). In interpreting the language of the waiver, we must determine and give effect to the purpose and intent of the zoning board of appeals, as may be gleaned from the entire language of the waiver when considered in its plain, ordinary, and popular sense. Cf., *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 430 N.W.2d 34 (1988); *NC + Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 363 N.W.2d 362 (1985). In reaching our determination, we look to the objects to be accomplished by the waiver, the evils sought to be remedied, or the purposes the waiver will serve, and construe the waiver in a reasonable manner that will best effectuate its purpose. Cf. *NC + Hybrids, supra.*

Furthermore, when construing a waiver, we must give effect, if possible, to all parts of the waiver. Whenever possible no word, sentence, or clause will be rejected as meaningless, and nothing plain, direct, and unambiguous will be ignored. Cf. *Sorensen v. Meyer*, 220 Neb. 457, 370 N.W.2d 173 (1985); *NC + Hybrids, supra.* We now turn to the language at issue.

When viewed in the context of the entire waiver, the "one year review" language clearly indicates an annual review. The relevant language of the waiver provides:

> Approval to operate a farmer's market . . . *on the following conditions*: That the operation be conducted from April 1st to December 31st only, and during the hours of 8:00 a.m. to sundown during the summer months and to 8:00 P.M. [sic] during the Spring and Fall of the year; that the directional sign on the property be no larger than 4 x 4 ft. . . . ; that the roof sign be no larger than 3 x 16 ft.; *that this waiver be conditioned on a one year review basis*; that the agreement signed between S. P. Benson and the applicant . . . be complied with; [and] that the parking lot may remain unpaved . . . .

(Emphasis supplied.)

Stratbucker acknowledges in its brief that the waiver's existence is conditioned on continued compliance with its terms. Brief for appellee at 4. Viewed with this realization in mind, the language of the waiver indicates that the "one year review" is simply one of a number of conditions that must be satisfied for the waiver to continue.

The "review" language is part of a list of items delineated as conditions. Under Stratbucker's characterization, after the first year of the waiver the review requirement effectively "disappears" from the list, while the other conditions remain in effect. Stratbucker's characterization treats the review condition as a one-time requirement, while the remainder of the list indicates a continual duty of compliance. That characterization reads a distinction into the series not warranted by the language of the waiver; we will not read any such distinction into the waiver.

Moreover, the inclusion of the word "basis" in the review clause indicates that a satisfactory review is simply one more factor that must be met for the waiver to continue. If the "one year review" language had not been followed by the word "basis," or if the review clause had preceded the introduction of the listed "conditions," Stratbucker's construction of the waiver would be more persuasive. Such is not the case, however. We determine that the conditions listed in the waiver, including the condition of review, are recurrent.

However, in addition to indicating that the conditions are recurrent, the language of the waiver also indicates that, depending on the actions of Stratbucker and the board, the waiver could be extended. Nothing in the waiver itself limits its period to only 1 year. Furthermore, the annual nature of the reviews anticipates future extensions.

We now turn to the district court's factual findings as affecting the extension of the waiver. The district court found that the board did not give Stratbucker a fair and complete hearing. The court thus took additional evidence and provided the "review" to which Stratbucker was entitled under the waiver. At trial, the district court determined that Stratbucker had complied with the terms of the waiver and reversed the board's refusal to extend the waiver.

As stated previously, we are to decide whether the district court abused its discretion or made an error of law when reviewing the board's decision. Cf., *Barrett, supra*; *Bowman, supra*. Where competent evidence supports the district court's factual findings, this court will not substitute its own factual findings for those of the district court. Cf., *Barrett, supra*; *Bowman, supra*. After reviewing the record, we find that the evidence supports the district court's findings that Stratbucker complied with the terms of the waiver. In particular we note, as did the district court, that Omaha's chief building inspector found Stratbucker to be in compliance with the terms of the waiver. Moreover, Stratbucker's certificate of occupancy, issued 20 days before the 1989 board meeting, stated that the market premises were "found to comply with all the applicable provisions of the Omaha Municipal Code." The record does not indicate that the district court erred or abused its discretion when it reversed the board's refusal to extend the waiver.

We thus come to the critical question: Did the district court err by extending the waiver only until August 25, 1991? We find that it did.

Although the district court extended the conditional waiver for an additional 13 months, the court made no provision for what would occur at the end of that period. As such, the waiver simply terminated on August 25, 1991, without the possibility of another extension. Stratbucker argues that although the district court correctly extended the waiver, the 13-month time limit had no logical basis and was therefore arbitrary. We agree.

Stratbucker cites *A.C. Nelsen Enterprises, Inc. v. Cook*, 188 Neb. 184, 195 N.W.2d 759 (1972), as support that the extension should not be terminated in an arbitrary fashion. *A.C. Nelsen Enterprises, Inc.* held that when the holder of a certificate of occupancy incurs substantial expenses and commitments in good faith reliance on the certificate, the certificate cannot be arbitrarily revoked. Stratbucker argues that because the district court found that Stratbucker had incurred substantial expenses while complying with the waiver conditions, the board's arbitrary time limitation on the waiver was invalid.

The Court of Appeals, adopting the board's argument, determined that Stratbucker was relying solely on its own

20-day certificate of occupancy when it expended the sums. See *Stratbucker Children's Trust v. Zoning Bd. of Appeals*, 1 NCA 1108 (1992). The Court of Appeals reasoned that because the certificate was clearly temporary in nature—extending only until the time of the year-end review—it should not have been relied on for Stratbucker's expenditures. However, the certificate of occupancy was not the only basis for Stratbucker's reliance.

In addition to its certificate of occupancy, Stratbucker asserts that it also relied on the conditional waiver itself. The waiver is analogous to the certificate of occupancy in *A.C. Nelsen Enterprises, Inc.*, and good faith reliance on the waiver therefore precludes its arbitrary revocation. See *Nuckles v. Allen*, 250 S.C. 123, 156 S.E.2d 633 (1967) (citing *Willis v. Town of Woodruff*, 200 S.C. 266, 20 S.E.2d 699 (1942)).

Because the waiver was conditioned on compliance with its terms, including 1-year reviews, Stratbucker could not reasonably expect that substantial expenditures alone would guaranty the continued existence of the waiver. However, Stratbucker *was* justified in believing that if it made expenditures in a good faith attempt to comply with the waiver, it would at least be given the opportunity to show compliance—and thereby perhaps receive another extension. See, *A.C. Nelsen Enterprises, Inc., supra*; *Nuckles, supra*.

The conditional waiver provided for yearly reviews to determine compliance with its terms. The district court determined that Stratbucker had, in fact, complied with those terms during the first year of the waiver. The district court thus was justified in extending the waiver for an additional year. However, the district court and Court of Appeals erred by allowing the waiver to terminate by the mere expiration of that 1-year period. Because Stratbucker expended substantial sums in good faith reliance on the waiver, the waiver could not be arbitrarily revoked. See *A.C. Nelsen Enterprises, Inc., supra*. Pursuant to the terms of the waiver, Stratbucker should have been provided a review at the end of the extension period to determine whether another extension should have been granted.

We affirm the Court of Appeals' reversal of the district

court's judgment on the question of permit reissuance. However, we reverse the Court of Appeals' ruling that the district court did not err by extending the conditional waiver only until August 25, 1991. We therefore remand the cause from the cross-appeal to the Court of Appeals with directions to remand to the district court for proceedings not inconsistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

LANPHIER, J., not participating.